IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| MICHAEL STROUD, JR.,<br>     Movant pro se, | MOTION TO VACATE<br>28 U.S.C. § 2255 |
| v. | CRIMINAL NO.<br>4:17-CR-0010-HLM-1 |
| UNITED STATES OF AMERICA ,<br>     Respondent. | CIVIL ACTION NO.<br>4:18-CV-0063-HLM-WEJ |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Michael Stroud, Jr.'s pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [16] ("Motion to Vacate") and Motion for Leave to Relate Back to the Original 28 U.S.C. § 2255 [28] ("Amended Motion"), and the government's Response [30].  For the reasons stated below, the undersigned **RECOMMENDS** that the Motion to Vacate, as amended, be **DENIED**.

## I.   PROCEDURAL HISTORY

The government filed a criminal information [1] against Mr. Stroud, charging him with possessing a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  Represented by Stephanie Kearns of the Federal Public Defender

Program, Inc., Mr. Stroud waived indictment and pled guilty pursuant to a negotiated plea agreement, in which the parties agreed to jointly recommend the statutory maximum sentence of 120 months of incarceration, and the government agreed to dismiss the indictment pending against Mr. Stroud in case number 4:16-CR-024-HLM-WEJ.  (Guilty Plea and Plea Agreement [4] at 4, 6; Plea Tr. [19] 2-4, 16-19.)  Mr. Stroud had previously entered a non-negotiated guilty plea in case number 4:16-CR-024-HLM-WEJ, but later moved to withdraw that plea upon learning that he was not accurately informed of the penalties when he pled to that indictment.  (Plea Tr. 26.)  Specifically, the parties initially believed that Mr. Stroud's statutory maximum was ten years, but later realized that Mr. Stroud actually faced a mandatory minimum of fifteen years of imprisonment and a maximum of up to life imprisonment under the Armed Career Criminal Act ("ACCA").  (Id.)  The plea agreement in this case specifically noted that the jointly recommended 120-month sentence was "a product of negotiations between the parties and in exchange for the government dismissing an otherwise provable charge against [Mr. Stroud] that would likely result in a greater sentence."  (Guilty Plea and Plea Agreement at 6; Plea Tr. 18.)

    The plea agreement included an appeal waiver provision, which provided that Mr. Stroud

2

> voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that [Mr. Stroud] may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court.

(Guilty Plea and Plea Agreement at 10.) This provision of the plea agreement further provided that Mr. Stroud could file a cross appeal if the government appealed the sentence. (Id.) Mr. Stroud signed the plea agreement and a separate certification section, which states in relevant part:

> I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

(Id. at 12-13.)

At the plea hearing, Mr. Stroud was sworn in and waived indictment. (Plea Tr. 3-4.) The Court explained to Mr. Stroud the rights he was giving up in pleading guilty, and Mr. Stroud stated that he understood. (Id. at 6-7.) Mr. Stroud then confirmed that he understood the nature of the charge against him. (Id. at 7-9.)

3

The Court next instructed Mr. Stroud that he faced a possible maximum sentence of ten years of imprisonment and explained that the Court would take into account the sentencing guidelines and other factors to determine a fair and reasonable sentence. (Id. at 10-15.) Mr. Stroud then confirmed that he still wanted to plead guilty and that no one had made him any promises other than those contained in the written plea agreement. (Id. at 15-16.) The prosecutor summarized the terms of the plea agreement and read the appeal waiver provision, and Mr. Stroud confirmed that the prosecutor's summary represented his "understanding of the total and complete plea agreement." (Id. at 16-21.) The Court then advised Mr. Stroud that he could not withdraw his plea if the Court elected not to follow a sentencing recommendation contained in the plea agreement, and Mr. Stroud confirmed that he understood. (Id. at 21.) The Court next reviewed the terms of the appeal waiver provision of the plea agreement and its consequences, and Mr. Stroud affirmed that he wanted to "stick with this written agreement." (Id. at 22-24.) Mr. Stroud then confirmed that he had enough time to talk with his lawyer about the case and that he was satisfied with her assistance. (Id. at 24-25.) Next, the prosecutor summarized what the evidence would show if the case went to trial, and Mr. Stroud agreed with those facts. (Id. at 28-29.) The Court accepted Mr. Stroud's plea. (Id. at 30.)

According to the presentence investigation report ("PSR"), Mr. Stroud's base offense level was twenty-four under U.S.S.G. § 2K2.1(a)(2) because he had two prior felony convictions for "crimes of violence," namely, a 2009 Fulton County conviction for two counts of aggravated assault with a deadly weapon, one count of burglary, and one count of possession of a firearm during the commission of a felony and a 2013 Fulton County conviction for two counts of aggravated assault, fleeing and attempting to elude, and traffic offenses. (PSR ¶¶ 15, 27, 30.) Mr. Stroud did not object to any of the PSR's sentencing guidelines calculations. (Id. at 34; Sentencing Hr'g Tr. [20] at 4.) At the sentencing hearing, the Court adopted the findings set forth in the PSR, found that Mr. Stroud's guideline range was 140 to 175 months of imprisonment, and sentenced him to 120 months of imprisonment, the sentence requested by the parties in the plea agreement. (Sentencing Hr'g Tr. at 3-5, 8.) Mr. Stroud did not file a direct appeal.

Mr. Stroud timely filed the instant Motion to Vacate and Amended Motion, which read together allege ineffective assistance of counsel at the plea and sentencing stage. Specifically, Mr. Stroud maintains that Ms. Kearns provided him ineffective assistance by failing to object to the characterization of his prior Georgia aggravated assault convictions as "crimes of violence" and that counsel's failure

caused him to plead guilty, rather than proceed to trial. (Mot. Vacate 4, 15-30; Am. Mot.) The government responds that Mr. Stroud's claim lacks merit. (Resp. 9-13.)

## II. DISCUSSION

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The analysis is two-pronged.  However, a court need not address both prongs "if the defendant makes an insufficient showing on one."  Id. at 697.  A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).  Additionally,

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

7

> collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

As to Mr. Stroud's argument that his prior aggravated convictions did not qualify as "crimes of violence" under the sentencing guidelines, the PSR describes those offenses as follows: (1) "on August 22, 2005, [Mr. Stroud] assaulted two victims by pointing a gun in [their] direction . . . when he entered the dwelling (house) with the intent to commit Aggravated Assault"; and (2) "on May 4, 2013, [Mr. Stroud] drove his vehicle toward two different law enforcement officers who were engaged in the performance of their duties placing them in danger of serious bodily injury." (PSR ¶¶ 27, 30.) Based on these descriptions, it is apparent that, on both occasions, Mr. Stroud was convicted of aggravated assault "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." O.C.G.A. §16-5-21(a)(2). The United States Court of Appeals for the Eleventh Circuit recently held that a "Georgia aggravated assault conviction under O.C.G.A. §16-5-21(a)(2) satisfies the enumerated offenses clause . . . of § 2K2.1(a)(2)." United States v. Morales-Alonso, 878 F.3d 1311, 1320 (11th Cir. 2018). Thus, Mr.

Stroud's aggravated assault convictions did qualify as "crimes of violence" under the sentencing guidelines, and Ms. Kearns's failure to raise this meritless objection was reasonable.

To the extent that Mr. Stroud argues that Ms. Kearns erroneously determined that the ACCA would apply to Mr. Stroud in case number 4:16-CR-024-HLM-WEJ, he is incorrect. As to Mr. Stroud's two aggravated assault convictions, a Georgia aggravated assault conviction "is the textbook definition of a crime that satisfies the [ACCA's] elements clause." McCloud v. United States, No. CV416-154, CR406-247, 2016 WL 3637095, at *2 (S.D. Ga. June 29, 2016), report and recommendation adopted, 2016 WL 4082699, at *1 (S.D. Ga. July 29, 2016). Mr. Stroud also has a prior Georgia conviction for burglary, which included entering the dwelling house of the victim. (PSR ¶ 28.) A Georgia conviction for burglary of a dwelling qualifies as a violent felony under the ACCA's enumerated crimes clause. United States v. Gundy, 842 F.3d 1156, 1169 (11th Cir. 2016). Thus, Mr. Stroud's three prior convictions are qualifying predicate convictions under the ACCA, and it was reasonable for Ms. Kearns to conclude that Mr. Stroud faced a much higher sentence in case number 4:16-CR-024-HLM-WEJ and that a ten-year sentence in this case was an attractive offer.

Mr. Stroud further argues that his four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense was improper because his parallel Whitfield County, Georgia charges were dismissed prior to sentencing in this case. (Am. Mot. 7); see also (Sentencing Hr'g Tr. 4.) "In determining a defendant's specific offense characteristics, a district judge must consider all of the defendant's 'relevant conduct,' as defined in U.S.S.G. § 1B1.3." United States v. Hopkins, 603 F. App'x 800, 803 (11th Cir. 2015) (per curiam). "Uncharged conduct may constitute relevant conduct." United States v. Valladares, 544 F.3d 1257, 1268 (11th Cir. 2008) (per curiam) (citation omitted). Mr. Stroud agreed with the government's recitation of the factual basis for his plea, which included that Mr. Stroud possessed the firearm while committing the Whitfield County offenses and fleeing from officers in a stolen vehicle. (Plea T. 28-29; PSR ¶¶ 17, 20.) Accordingly, Mr. Stroud cannot show that Ms. Kearns provided him ineffective assistance regarding this properly applied enhancement.

Mr. Stroud further cannot show prejudice based solely on his after the fact assertion that he would have proceeded to trial and not pleaded guilty had counsel raised these meritless objections. See Wilcox v. United States, No. 8:10-CV-1917-T-27EAJ, 2011 WL 5975683, at *10 (M.D. Fla. Nov. 29, 2011) ("In sum, Petitioner presents no credible evidence, other than his own self serving, after-the-fact

contentions, that . . . his attorney was in the slightest degree remiss in his advice and representation concerning the plea, or that he would not have pleaded guilty and insisted on a trial but for counsel's alleged deficient performance."). The plea bargain in this case allowed Mr. Stroud to receive a sentence five years shorter than the mandatory minimum he was likely facing in case number 4:16-CR-024-HLM-WEJ. Thus, Mr. Stroud has not shown a reasonable probability that he would not have pleaded guilty and insisted on going to trial absent counsel's alleged omissions.

### III.  **CERTIFICATE OF APPEALABILITY**

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should

11

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Mr. Stroud's ground for relief, the resolution of the issues presented is not debatable by jurists of reason, and the Court should deny a certificate of appealability.

## IV. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Motion to Vacate [16], as amended [28], be **DENIED** and that the Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral of the Motion to Vacate to the undersigned.

**SO RECOMMENDED** this 10th day of July, 2018.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE